# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DAHLIA DOGGINS, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 4:25-cv-327 |
| | § | Judge Mazzant |
| RUIZ FOOD PRODUCTS, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Ruiz Food Products, Inc.'s Motion to Stay Case and Compel Arbitration (the "Motion") (Dkt. #5). Having considered the Motion, the relevant pleadings, and the applicable law, the Court finds that the Motion should be **GRANTED**.

## BACKGROUND

From April 2016 to April 2021, Defendant employed Plaintiff as a tortilla thrower (Dkt. #1 at ¶¶ 9, 19). Plaintiff asserts that throughout her five-year term of employment, she observed and was subjected to immense racial disparity (Dkt. #1 at ¶¶ 10–15). On April 30th, 2019, Defendant required Plaintiff to, and Plaintiff did, sign an Arbitration Agreement (the "Agreement") (Dkt. #5 at p. 2; Dkt. #5-1 at pp. 7–8). At the same time, Plaintiff also signed a document (the "Handbook Acknowledgment Form") which clarified the extent of the Agreement and was likely attached to an employee handbook (the "Handbook" or "Team Member Handbook") (Dkt. #7-1 at p. 2).

Following the execution of both documents, Plaintiff continued to work for Defendant for almost two years, until Plaintiff allegedly suffered a crippling workplace injury (Dkt. #1 at ¶ 16).[1] Shortly thereafter, Defendant terminated Plaintiff's employment (Dkt. #1 at ¶ 19). Plaintiff then filed a 42 U.S.C. § 1981 racial discrimination claim against Defendant in this Court (Dkt. #1 at ¶¶ 24–25).

On June 2, 2025, Defendant filed an Answer and a Motion to Stay Case and Compel Arbitration (Dkt. #5). Defendant argues that Plaintiff improperly brought her claim before the Court because the parties signed a valid agreement to arbitrate and Plaintiff continued to work for Defendant after providing her assent (Dkt. #5 at pp. 2–5). On June 16, 2025, Plaintiff filed her Response to Defendant's Motion to Stay Case and Compel Arbitration (Dkt. #6). In her Response, Plaintiff attaches the Handbook Acknowledgement Form and argues that the terms of the document render the Agreement illusory and unenforceable (Dkt. #6 at pp. 1–3; Dkt. #6-1 at p. 2). On June 23, 2025, Defendant filed its Reply to Plaintiff's Response (Dkt. #7), arguing that the Agreement remains non-illusory despite the provisions of the Handbook Acknowledgment Form. Although the Motion became ripe for adjudication at that point in time, the Court filed an Order seeking submission of the full Agreement and Handbook into the record (Dkt. #8).[2] Plaintiff and

---

[1]  The nature and existence of Plaintiff's workplace injury is contested, and further details are not presently known to the Court (*See* Dkt. #1 at ¶¶ 16–20; Dkt. #3 at ¶¶ 16–20).

[2]  This Order was necessitated by the fact that neither party had offered the entire Team Member Handbook to the Court. Further, the Court only had access to two pages of the three-page Agreement. Under these circumstances, the Court declined to issue a 'half-blind' Memorandum Opinion and Order. *See, e.g.*, *Whataburger Restaurants LLC v. Cardwell*, 545 S.W.3d 73, 83 (Tex. App.—El Paso 2017, no pet.) (analyzing the impact that a non-contractual handbook had on an agreement to arbitrate where "[the court] do[es] not have the four corners of the actual document in our record. We might not even have two corners. We have two pages from the middle of a fifty-page document").

Defendant each supplemented their original motions on October 31, 2025 (Dkt. #11; Dkt. #12). The Court now rules on the validity of the Agreement.

## LEGAL STANDARD

Under the Federal Arbitration Act, "parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (internal quotations omitted). Thus, the FAA establishes "'a liberal federal policy favoring arbitration agreements.'" *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Because arbitration is a creature of contract, the FAA "requires courts to enforce agreements to arbitrate according to their terms." *Id.* at 98 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

Although there is a strong federal policy favoring arbitration, the policy "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478 (citing *Byrd*, 470 U.S. at 219). Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration

any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478 (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 584 U.S. 1031 (2018). This initial question is for the Court. *Kubala*, 830 F.3d at 201. To determine whether there is a valid agreement to arbitrate, courts "'apply ordinary state-law principles that govern the formation of contracts.'" *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 939 (1995)).

If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'" *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question is usually for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 201–02.

4

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) (citing *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002)). As the Supreme Court has stated: "'[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers*, 363 U.S. at 582–83 (1960)). In this scenario, the party opposing arbitration bears the burden to demonstrate either that the agreement is invalid or that the claims are outside of the agreement's scope. *See Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004).

## ANALYSIS

The instant Motion presents three issues for the Court to resolve: (1) whether the FAA procedurally governs the Agreement; (2) whether the Agreement is valid under substantive Texas contract law; and (3) whether Plaintiff's claim falls within the scope of the Agreement.

## I.    Applicability of the FAA

As an initial matter, the Court must first decide whether the FAA applies to the Agreement. The very first sentence of the Agreement reads: "[t]his Agreement is governed by the Federal Arbitration Act . . . ." (Dkt. #5-1 at pp. 7–8). Because the Agreement explicitly states that the FAA governs, the Court will apply the FAA to procedural matters. *See Pedcor Mgmt. Co., Inc. Welfare*

*Benefit Plan v. Nations Pers. of Tex., Inc.*, 343 F.3d 355, 361 (5th Cir. 2003) (explaining that the FAA generally governs the construction of an agreement to arbitrate).

## II.    Arbitration Agreement Validity

Next, the Court must determine whether the Agreement constitutes a valid contract. To determine whether an agreement to arbitrate is valid, courts apply "'ordinary state-law principles that govern the formation of contracts.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)). Both parties agree that Texas law applies (Dkt. #5 at p. 2; Dkt. #6 at p. 2). Thus, the validity of the Agreement will be determined under Texas contract law. *See, e.g.*, *id.*; *Kubala*, 830 F.3d at 202. Under Texas law, a binding contract requires: "'(1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding.'" *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) (quoting *Coffel v. Stryker Corp.*, 284 F.3d 625, 640 n.17 (5th Cir. 2002)). Texas law also rejects the validity of any arbitration agreement found to be "illusory." *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010). In Texas, "an arbitration clause is illusory if one party can 'avoid its promise to arbitrate by amending the provision or terminating it altogether.'" *Carey*, 669 F.3d at 205 (quoting *In re 24R*, 324 S.W.3d at 567). The Agreement will constitute a valid contract if it satisfies the elements of a binding contract and is further found to be non-illusory.

### A.    The Agreement satisfies the elements of a binding contract.

The Agreement between Plaintiff and Defendant contains a mutual promise that each party will arbitrate certain claims, including those brought under 42 U.S.C. § 1981 (Dkt. #5-1 at pp. 7–8). The Court finds that Plaintiff and Defendant each signed the Agreement and that Plaintiff signed

the Handbook Acknowledgment Form (Dkt. #5; Dkt. #5-1 at pp. 7–8; Dkt. #6; Dkt. #6-1 at p. 2;

Dkt. #7).[3] Thus, Defendant has met its initial burden to prove a valid arbitration agreement exists.

*See Ron v. Ron*, 836 F. App'x 192, 196 (5th Cir. 2020*); Corsaro v. Columbia Hosp. at Med. City Dall.*

*Subsidiary LP*, No. 3:21-CV-01748-N, 2021 WL 6135342, at *3 (N.D. Tex. Dec. 29, 2021).

B.    **The Agreement is enforceable.**

The Court next examines Plaintiff's illusory contract argument in detail. An arbitration

contract is considered illusory and unenforceable if it permits one party to unilaterally make

changes to and retroactively revoke its terms. *See Torres v. S.G.E. Mgmt., L.L.C.*, 397 F. App'x 63,

68 (5th Cir. 2010). "An arbitration agreement is illusory if it binds one party to arbitrate, while

allowing the other to choose whether to arbitrate." *Royston, Rayzor, Vickery, & Williams, LLP v.*

*Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). Put another way, an arbitration agreement may not allow

an employer to "hold its employees to the promise of arbitration while reserving its own escape

hatch." *Carey*, 669 F.3d at 206.

Plaintiff does not argue that the Agreement is illusory by its own terms. Instead, Plaintiff

argues that the Agreement is made illusory by a provision included in an entirely separate

document: the Handbook Acknowledgement Form (Dkt. #6 at p. 3). That provision expressly

provides the following:

> I further understand, acknowledge and agree that the Company may at any time,
> add, change, or rescind any policy or practice at its sole discretion, without notice,

---

[3]   See *infra*, section II(B)(1). The Parties do not dispute the existence of a potentially enforceable agreement to
arbitrate. Though Plaintiff argues she can no longer "specifically recall signing the Arbitration Agreement or the
Acknowledgment," she does not put forward any additional evidence against the traditional elements of contract
formation (Dkt. #12 at p. 2). In light of the evidence offered by Defendant and the arguments presented, and because
"[a] party may prove the existence and execution of the arbitration agreement by attaching to its motion . . . an
affidavit proving up the agreement and stating that the nonmovant entered into the agreement," the Court concludes
that Defendant has raised sufficient facts in its pleadings to support the existence of a valid arbitration agreement
notwithstanding the signature dispute (Dkt. #5-1 at p. 3). *Rodgers-Glass v. Conroe Hosp. Corp.*, No. CIV.A. H-14-3300,
2015 WL 4190598, at *5 (S.D. Tex. July 10, 2015).

7

except for: (1) the rights of the parties to terminate employment at will, which may only be modified by an express written agreement signed by me and the President of Ruiz Food Products, Inc. and (2) *the Arbitration Agreement, which may only be modified by an agreement accepted or deemed to have been accepted by me and signed by the President of Ruiz Food Products, Inc.*

(Dkt. #6-1 at p. 2 (emphasis added)).

Plaintiff highlights the fact that Defendant, through the Handbook Acknowledgement Form, reserves the right to modify the Agreement "by an agreement accepted or *deemed to have been accepted*" by Plaintiff (Dkt. #6-1, at p. 2 (emphasis added); Dkt. #6 at p. 3). Plaintiff argues that the Handbook Acknowledgement Form permits Defendant to unilaterally force, or otherwise "deem," Plaintiff to accept any modification to the Agreement that Defendant chooses (Dkt. #6 at p. 3). Finally, Plaintiff further argues that she has raised fact questions which preclude this Court's enforcement of the Agreement altogether (Dkt. #12 at pp. 1–2). On the other hand, Defendant maintains that the Agreement is valid despite the Handbook Acknowledgment Form (Dkt. # 7 at p. 3). There exists, then, three distinct questions that must precede a fair judgment on the question of the Agreement's enforceability: first, has Plaintiff raised any fact issues that preclude this Court's ruling as a matter of law? Second, does the doctrine of incorporation permit the Handbook Acknowledgement Form to modify the Agreement by its terms? And third, has the Handbook Acknowledgement Form rendered the Agreement illusory?

### 1.    Fact issues do not preclude this Court's ruling.

As an initial matter, the Court applies "traditional contract principles" to determine what effect, if any, the fact issues or the Handbook Acknowledgement Form has on the Agreement. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022); *see Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002). To that end, "[t]he plain language controls, words must be construed in the context in which they are used," and the Court must "examine and

consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Whataburger,* 645 S.W.3d at 194 (citation modified).

Plaintiff presents three novel issues in her Supplemental Response to this Court's prior Order: (a) she can no longer recall whether the Handbook Acknowledgment Form was attached to the Handbook; (b) she can no longer recall signing either the Agreement or the Handbook Acknowledgment Form; and (c) the visual difference between her signatures on the Agreement and the Handbook Acknowledgment Form is unexplained (*See* Dkt. #12 at pp. 2–3; Dkt. #12-4). Because certain fact issues may very well "[preclude] this Court from determining as a matter of law whether the [relevant policy] is valid and enforceable," the Court addresses each challenge in turn. *Goad v. St. David's Healthcare P'ship, L.P., LLP*, No. 1-16-CV-044 RP, 2016 WL 2853573, at *4 (W.D. Tex. May 13, 2016).

First, Plaintiff's failure to recall whether the Handbook Acknowledgment Form was attached to the Handbook is not sufficient to preclude this Court's ruling as a matter of law. While Defendant and Plaintiff might disagree as to the physical position of the document in their briefs, the point is ultimately moot (Dkt. #11 at p. 5; Dkt. #12 at p. 2). As expressed at length below, the Team Member Handbook and the signed Handbook Acknowledgment Form each contain language enabling the Court to conclude that both documents were attached to one another and should be construed together.[4]

---

[4] One relevant portion of the Handbook Acknowledgment Form reads "I also understand that if I leave the Company that I will return *this Team Member Handbook*." (Dkt. #6-1 at p. 2 (emphasis added)). Furthermore, the Handbook Acknowledgment Form signed by Plaintiff is clearly paginated as "Page 32," in direct reference to the 31 earlier pages of the Handbook (Dkt. # 6-1 at p. 2; Dkt. #12-2).

Second, Plaintiff's poor memory and reliance on *Goad* similarly does not preclude enforcement of the Agreement under the facts presented. *Id.* In that case, an employee presented evidence, including multiple sworn declarations, that she was never informed of the mandatory binding arbitration policy that her employer had posted online. *Id.* at *2–3. In response, her employer argued that she had been exposed to the policy in an orientation event, presented evidence that her signature was on a sign-in sheet, and claimed she had to attend online training that referenced the policy. *Id.* at *3. The district court in *Gann* held that the employee had successfully raised a genuine fact issue as to whether she had received notification of mandatory arbitration. *Id.* at *4. As a result, it declined to rule on the enforceability of the arbitration agreement as a matter of law. *Id.* In this case, Defendant has produced a physical copy of the Agreement itself, bearing the signatures of both parties (Dkt. #5-1 at pp. 7–8). "[W]ithout a legal or equitable reason to overlook someone's signature on an arbitration agreement, that signature represents their adherence to its terms. That remains true even where a plaintiff 'does not recall signing it.'" *Disch v. Grubbs Auto. GRA, LLC*, No. 4:23-CV-01202-P, 2024 WL 2819524, at *2 (N.D. Tex. June 3, 2024). Unlike the employee in *Goad*, Plaintiff has not offered a single sworn declaration against Defendant's assertion that the Agreement was properly signed and noticed (Dkt. #5). *Goad*, 2016 WL 2853573, at *2–3. To the contrary, Defendant has produced a sworn declaration supporting the validity of the Agreement (Dkt. #5-1). As a result, Plaintiff's signature on the Agreement constitutes adherence to its terms.[5]

---

[5] The Court need not apply this analysis to the Handbook Acknowledgment Form. Although Plaintiff states that "[t]here are significant factual disputes about whether Plaintiff even signed the Acknowledgment and/or the Arbitration Document," Plaintiff seems to contradict her own position by expressly admitting later in the same document that she "believes [the signature from the Handbook Acknowledgment Form] is her signature" (Dkt. #12 at p. 2; Dkt. #12-4 at p. 1).

Third, Plaintiff has not created a genuine fact issue by comparing the signatures on the Agreement and Handbook Acknowledgment Form. Although the "Team Member Signature" sections vary in style, the "printed name" sections display no such inconsistency (*See* Ex. 1). To the extent that "Texas recognizes typed or stamped signatures—and presumably also scanned signatures—so long as they are rendered by or at the direction of the signer," the printed name section that Plaintiff "signed" constitutes an unchanged and parallel indicator of Plaintiff's notice and assent to the Agreement. *Reinagel v. Deutsche Bank Nat. Tr. Co.*, 735 F.3d 220, 227 (5th Cir. 2013).

| Ex. 1 | |
|---|---|
| AGREED AND RECEIVED:<br><br>*Dahlia Doggin*<br>Team Member Name Printed<br><br>*Dahlia Doggin*<br>Team Member Signature<br><br>Form RF-00-09F<br>Page 3 | *Dahlia Doggin*<br>Print Name<br><br>*Dahlia Doggin*<br>Team Member Signature |
| (Dkt. 5-1 at p. 8 (Agreement signature)) | (Dkt. 6-1 at p. 2 (Handbook Agreement Form signature)) |

Finally, the Court notes that Plaintiff makes no clear assertion regarding a lack of notice of the Agreement. At most, Plaintiff claims that she "does not specifically recall signing the Arbitration Agreement or the Acknowledgment" (Dkt. #12 at p. 2). But one's recollection of the act of signing a document and of agreeing to arbitrate certain claims are two distinct matters. Because Plaintiff's argument regarding the Agreement's formation is limited solely to the issue of physical signature, Plaintiff has failed to raise a fact question precluding the enforcement of the

Agreement. *Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the absence of h[er] signature."); *see also Chandler, Jr. v. Waterwood Nat. Associates, L.P.*, No. CIV.A. H-05-4279, 2006 WL 1030068, at *2 (S.D. Tex. Apr. 19, 2006) ("Texas law and the Federal Arbitration Act do not require arbitration clauses to be signed, so long as they are written and the parties agree to them.").

>    **2.    The Handbook Acknowledgment Form does not modify the Agreement.**

Under Texas law, "[d]ocuments incorporated into a contract by reference become part of that contract." *In re 24R*, 324 S.W.3d at 567. However, "an entirely separate document that does not impose any contractual obligations" between an employer and its employees cannot incorporate by reference or modify an agreement to arbitrate. *Id.* at 567–68. As noted above, Plaintiff argues that the Handbook Acknowledgment Form modifies the Agreement despite its existence as a document fully separate and apart from the Agreement (Dkt. #6). Thus, for Plaintiff's argument to succeed, this Court must first find that either document satisfies the following two criteria: (1) the document imposes contractual obligations on the parties; and (2) the document successfully incorporates the other document by reference. *See id.*

In consideration of the relevant caselaw and the evidence presented, the Court finds that the Handbook Acknowledgement Form neither incorporates nor modifies the agreement to arbitrate between Plaintiff and Defendant. First, the Handbook Acknowledgment Form contains an effective contractual disclaimer and thus fails to satisfy the first prong of the test listed above. (Dkt. #6-1 at p. 2). Second, the language of the Agreement prevents it from incorporating the Handbook Acknowledgment Form by reference (Dkt. #6-1 at p. 2).

a.      **The Handbook Acknowledgment Form does not incorporate the Agreement by reference.**

The Handbook Acknowledgement Form is limited by a valid contractual disclaimer and thus cannot incorporate by reference and modify the Agreement. In *In re 24R, Inc.*, the Texas Supreme Court questioned whether an employee handbook had modified an arbitration policy and rendered it illusory. *Id.* at 567. The employee handbook mentioned the arbitration policy and expressly retained the employer's "right to unilaterally change personnel policies." *Id.* However, the Texas Supreme Court found that the handbook had no contractual effect because it included the following disclaimer: "[t]he policies and procedures *in this manual* are not intended to be contractual commitments by [defendant] . . . ." *Id.* (emphasis added). Because the disclaimer prevented the handbook from having any contractual effect, the handbook could not incorporate the separate arbitration policy by reference and thus did not modify it. *See id.* Here, although the parties disagree as to whether the Handbook Acknowledgement Form is physically separate from the Handbook, it nevertheless contains a similar disclaimer, stating in relevant part that:

> I have received a copy of the Ruiz Food Products, Inc. Team Member Handbook and acknowledge my obligation to read and understand its contents. I understand and agree that the *Team Member Handbook and these policies* are intended to provide an overview of the Company's personnel policies and do not necessarily represent all such policies in force. I understand that, with the exception of the Arbitration Agreement, *the Company's Team Member Handbook, policies and practices do not create an express or implied contract or covenant of any type between the Company and me*, and that employment and compensation are for no fixed term and I may be terminated by the Company at any time with or without cause or notice. Likewise, I may resign at any time . . . . I also understand that if I leave the Company that I will return *this* Team Member Handbook . . ."

(Dkt. #6-1 at p. 2 (emphasis added)).

The contractual disclaimer in this case, as applied to the Handbook Acknowledgement Form on which it rests, prevents the document from either incorporating or modifying the Agreement.

13

At the beginning of the document, the provisions of the Handbook Acknowledgment Form are implicitly referred to by the following language: "the Team Member Handbook and *these policies*" (Dkt. #6-1 at p. 2 (emphasis added)). A close reading of the Handbook Acknowledgment Form indicates that the contractual disclaimer applies to "the Company's Team Member Handbook, *policies* and practices" (Dkt. #6-1 at p. 2 (emphasis added)). Because courts applying Texas law are "guided by the rule of contract interpretation that favors consistent use of a term that is used more than once," it stands to reason that the repeated use of "policies" in the disclaimer refers to the same "policies" included in the Handbook Acknowledgment Form. *Farmers Group, Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021). Perhaps most compelling is that the Handbook Acknowledgment Form itself is expressly equated with the disclaimed Team Member Handbook at the end of the document, which asks employees to "return *this* Team Member Handbook . . . ." (Dkt. #6-1 at p. 2). A plain reading of this language prohibits construing the Handbook Acknowledgment Form or the Team Member Handbook as agreements with any contractual effect. *See, e.g.*, *City of Denton v. Rushing*, 570 S.W.3d 708, 712 (Tex. 2019) (holding that a disclaimer prevented an employee manual from having contractual effect and further noting that "we have upheld broad general disclaimers as a valid means to negate contractual intent").

Although the Handbook Acknowledgment Form appears on its face to reserve Defendant's right to modify the Agreement, the relevant contractual disclaimer renders it unable to have any binding effect on the parties. *See, e.g.*, *In re 24R*, 324 S.W.3d at 567 (finding that a separate employee policy manual that expressly reserved an employer's "right to unilaterally change personnel policies" did not incorporate or modify an agreement to arbitrate because "[t]he employee policy manual is not a contract. In fact, it contains an express disclaimer . . . ."). The terms of the

Handbook Acknowledgment Form indicates that it exists as a part of the contractually disclaimed Team Member Handbook and its accompanying "policies" (Dkt. #6-1 at p. 2). Thus, the provision reserving Defendant's right to "deem" Plaintiff to accept modifications cannot constitute a valid agreement capable of incorporating or modifying the Agreement by reference.

> **b.    The Agreement does not incorporate the Handbook Acknowledgment Form by reference.**

A contract may incorporate a separate document by reference so long as it "plainly refers to another writing." *See Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968). However, "[b]efore one document can incorporate a second document, the first document must unmistakably make the second document a part of it. A mere reference to the second document is not an incorporation." *Berwick v. Wagner*, 336 S.W.3d 805, 809 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citation modified). Here, the three-page Agreement makes no express mention of the Handbook Acknowledgment Form or the parties' ability to modify the agreement. Instead, the Agreement expressly states that it alone "contains the parties' *full and complete agreement* relating to the formal resolution of disputes . . . . [t]o the extent any language in the Team Member Handbook or other Company policies conflicts with the provisions of this Agreement, this Agreement prevails" (Dkt. #5-1 at pp. 7–8). Because "[m]erely mentioning the handbook, without more, does not incorporate the entire handbook or its terms into the [document,]" the Court declines to find that the Agreement incorporated and adopted the terms outlined in the Handbook Acknowledgment Form. *See Myers v. Solais Lighting, LLC,* No. 421CV00343SDJCAN, 2022 WL 441612, at *10 (E.D. Tex. Jan. 3, 2022*), report and recommendation adopted*, No. 4:21-CV-343-SDJ, 2022 WL 433128 (E.D. Tex. Feb. 11, 2022).

### 3.    The Handbook Acknowledgement Form does not render the Agreement illusory and unenforceable.

Neither the Handbook Acknowledgment Form nor the Agreement incorporate each other by reference. As a result, Plaintiff's "argument rests on language from . . . an entirely separate document that does not impose any contractual obligations between [Defendant] and its employees." *In re 24R*, 324 S.W.3d at 568. As a result, Plaintiff must argue that the Agreement is illusory by its own terms. *See id.* Because Defendant does not expressly retain any right within the Agreement to modify or abolish it, and because the Agreement further "survives termination of the employment relationship," it is not illusory under Texas law (Dkt. #5-1, at p. 7). *See id.*; *Augustine v. Dallas Med. Ctr., LLC*, No. 419CV00020ALMKPJ, 2019 WL 3806037, at *4 (E.D. Tex. June 25, 2019), *report and recommendation adopted*, No. 4:19-CV-0020-ALM-KPJ, 2019 WL 3940644 (E.D. Tex. Aug. 21, 2019) (finding that an arbitration agreement is not illusory where an employer could not unilaterally amend or terminate an arbitration clause).

## III.    Whether the Dispute Falls Within the Scope of the Agreement

Plaintiff's claim falls squarely within the scope of the Agreement. Doubts as to the scope of arbitration agreements are resolved in favor of finding coverage. *In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007) (citing *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 782–83 (Tex. 2006)). The Agreement states in Section 1 that:

> Except as otherwise provided herein, this Agreement also applies, without limitation, to disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy, the employment relationship or the termination of that relationship, contracts, trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, termination, retaliation, discrimination or harassment and claims arising under the Fair Credit Reporting Act, Defend Trade Secrets Act, Title VII of the Civil Rights Act of 1964 (subject to the next to last paragraph of this Section 1, if applicable), 42 U.S.C. §1981,

Rehabilitation Act, Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991 . . . .

(Dkt. #5-1 at p. 7).

The Court finds that Plaintiff's dispute falls within the scope of Section 1 because it expressly covers Plaintiff's cause of action: disputes arising under 42 U.S.C. §1981 and the Civil Rights Acts of 1866 and 1871 (Dkt. #5-1 at p. 7).

In sum, the Agreement is valid and enforceable under Texas contract law, and Plaintiff's claim is precisely of the nature contemplated by the Agreement. Because the Agreement is valid under Texas law, the Agreement is enforceable under the FAA. *See Kubala*, 830 F.3d at 204. Consistent with the strong federal policy favoring arbitration, the Court will enforce the Agreement. *See CompuCredit Corp.*, 565 U.S. at 97. Therefore, the Court concludes that Defendant's Motion should be **GRANTED**.

## CONCLUSION

It is therefore **ORDERED** that Defendant Ruiz Food Products, Inc.'s Motion to Stay Case and Compel Arbitration (Dkt. #5) is hereby **GRANTED**.

It is further **ORDERED** that this case be stayed pending arbitration.

**IT IS SO ORDERED.**

**SIGNED this 24th day of November, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE